IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JAMES A. CAULEY, | : |
| Plaintiff, | : |
| VS. | : |
| | : 1 : 13-CV-52 (WLS) |
| CAROLYN COLVIN, | : |
| Acting Commissioner of Social Security, | : |
| Defendant. | : |

## RECOMMENDATION

The Plaintiff herein filed this Social Security appeal on March 29, 2013, challenging the Commissioner's final decision denying his application for disability benefits, finding him not disabled within the meaning of the Social Security Act and Regulations. Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)*; Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that

the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.   "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.

*Administrative Proceedings*

The Plaintiff filed an application for disability benefits with a protective filing date of September 29, 2009.  (T-246-52, 299).  His claims were denied initially and upon reconsideration. (T – 154-63).    Two hearings were held before an ALJ, in January and June 2011.  (T-32-129). Thereafter, in a hearing decision dated October 12, 2011, the ALJ determined that the Plaintiff was not disabled.  (T- 130-53).    The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the Commissioner.  (T-1-7).

*Statement of Facts and Evidence*

The Plaintiff was 49 years of age at the time of the ALJ's decision with a date last insured for Title II purposes of September 30, 2008.  (T – 246, 272).   Plaintiff alleges disability since August 27, 2004, due to a heart attack, post traumatic stress disorder, personality disorder, anxiety, seizures, high blood pressure, shortness of breath, and arthritis.  (T - 289).   He graduated from high school and attended two (2) years of college, and has past relevant work experience as a general laborer, truck driver, tire repairer, and military instructor.  (T- 296, 290).   As determined by the ALJ, Plaintiff suffers from severe impairments in the form of a seizure disorder, a history of head trauma with residual headaches and depression, release of right small finger Dupuytren's contracture, essential hypertension, a personality disorder, and cocaine, alcohol, and marijuana dependence in remission.

(T – 136).   The ALJ found that the Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment, and remained capable of performing medium work activity with certain restrictions.   (T - 137).   The ALJ relied on the testimony of Vocational Experts to determine that although the Plaintiff could not return to his past relevant work, the Plaintiff remained capable of performing other jobs that existed in significant numbers in the national economy and thus was not disabled.   (T- 147-49).

## DISCUSSION

*New evidence*

Plaintiff initially asserts that new evidence in the form of a Veterans Administration disability determination from July 2012 was allegedly presented to the Appeals Council but not included in the record before the Administration, and that this evidence merits a remand of this action under Sentence Six.  (Doc. 8).   However, Plaintiff has not shown that the evidence is material in that it could reasonably be expected to change the ALJ's decision.   Pursuant to Sentence Six of 42 U.S.C. § 405(g), the Court is empowered to remand a case to the Commissioner for consideration of material, new evidence if the plaintiff can demonstrate good cause as to why it was not previously submitted. *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985).   In order to obtain a remand under Sentence Six, the Plaintiff must establish that:   1) there is new, noncumulative evidence; 2) the evidence is material in that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level.   *Caulder v. Bowen*, 791 F.2d 872, 879 (11th Cir. 1986).

The new evidence presented by the Plaintiff consists of a finding of disability by the Veterans Administration, an issue specifically reserved to the Commissioner in deciding Social Security claims.

*Gray v. Comm'r. of Social Security*, --- Fed.Appx. ---, 2013 WL 6840288 (11th Cir., Dec. 30, 2013) (noting that "disability is an issue reserved to the Commissioner as an administrative finding"). The new evidence does not provide any additional, relevant medical information regarding Plaintiff's impairments other than that already considered by the ALJ. (Docs. 7, 8). The Veterans Administration specifically and primarily relied on medical records and findings dated between 1981 and 2003 and 2009 and 2012, prior to and after the relevant period under consideration by the Social Security Administration, and based its determination only on a conclusion that the Plaintiff had suffered some level of impairment that was connected to his time of military service. (Docs. 7, 8). The Veterans Administration found the Plaintiff disabled only on a scale between 20% and 70% regarding the same impairments identified by the ALJ. (Doc. 8, p. 5; T - 136). The Commissioner's regulations provide that "[a] decision by . . . any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind." 20 C.F.R. § 404.1504.

"The VA relies on independent and distinct criteria to assess disability, however, and its determination would not have controlled whether [the Plaintiff] was eligible for Social Security disability benefits." *Deloge v. Comm'r. of Social Sec. Admin.*, 540 Fed.Appx. 517, 518-19 (6th Cir. 2013). As noted by the Commissioner, the determination of another governmental agency is based on the rules of the other agency, and is not binding on the Commissioner, despite such determinations being entitled to great weight. 20 C.F.R. § 404.1504; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983). Plaintiff has not established that the new evidence presents a reasonable possibility of changing the administrative result, and therefore has failed to establish a sufficient basis for a Sentence Six remand based on the new evidence presented.

*Residual functional capacity*

The Plaintiff asserts that the ALJ erred in determining his residual functional capacity, in that the ALJ's findings conflict with Dr. Spivey's opinion.   The ALJ determined that the Plaintiff

> had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except the claimant can only lift and carry thirty pounds with the left upper extremity and no appreciable weight with the right upper extremity.   He must avoid overhead lifting with the right upper extremity.   He can perform only occasional overhead lifting with the left upper extremity.   He can walk, stand, or sit for six hours in an eight-hour day.   He must avoid all hazards in the workplace such as dangerous machinery or unprotected heights.

(T – 137).

Dr. Spivey performed a consultative examination of the Plaintiff on February 24, 2011, and noted that the Plaintiff had recently undergone surgery on his right hand from which he was still recovering.   (T – 912, 929).   Although Dr. Spivey stated that Plaintiff could not handle, finger, feel, or push/pull with his right hand, he stated that Plaintiff's limitations had not and would not last for 12 consecutive months.   (T – 931, 934).   As noted by the Commissioner, there is no indication that the limitations associated with Plaintiff's right hand existed prior to the date Plaintiff was last insured for Title II disability purposes, to wit, September 30, 2008.   (T – 272).   Thus, there is no basis for the assertion that the ALJ's residual functional capacity findings should have included the temporary right hand limitations issued by Dr. Spivey.   The ALJ noted that "Dr[.] Spivey had no significant objective findings other than the recovering right hand."   (T – 140).

Plaintiff further contends that the findings of consultative psychological examiner Dr. Brinkman were not entitled to the great weight afforded by the ALJ, as Dr. Brinkman did not review the Plaintiff's medical records.   However, Dr. Brinkman performed a mental status examination of the Plaintiff and indicated in his findings that he had reviewed a portion of the Plaintiff's medical

5

records from 2010, and based his opinions on this history and his own examination.  (T – 940, 947, 950-51).  Plaintiff provided Dr. Brinkman with information regarding his mental health treatment and history.  (T – 944).  The ALJ reviewed Dr. Brinkman's findings, noting that his assessment of malingering in the Plaintiff was "specifically based on purposeful poor performance on intellectual testing."  (T – 146).  In an effort to reconcile the conflicting findings among the various examining and treating physicians, the ALJ ultimately looked to the Plaintiff's activities, and assigned "considerable weight" to the opinions provided by State agency consultants.  *Id.*  Pursuant to 20 C.F.R. § 404.1527(e)(2), the Commissioner will "consider opinions from treating and examining sources on issues such as . . . your residual functional capacity . . . [although] the final responsibility for deciding these issues is reserved to the Commissioner."  The ALJ's findings regarding Dr. Brinkman's opinions were properly reached and supported by substantial evidence.

### *"Other jobs" evidence*

Finally, the Plaintiff asserts that the ALJ erred at Step Five of the sequential evaluation process by failing to prove that other jobs exist in the national economy which Plaintiff is capable of performing.  Specifically, the Plaintiff points to the testimony of the Vocational Expert who testified before the ALJ at the supplemental hearing in June 2011, and contends that this expert testified to the existence of no jobs which the Plaintiff could perform.  Furthermore, the Plaintiff contends that the jobs identified by the vocational expert who testified at the first hearing before the ALJ in January 2011 conflict with descriptions in the Dictionary of Occupational Titles, and therefore Plaintiff cannot perform the jobs identified.

The ALJ held a supplemental hearing on Plaintiff's claims six months after the initial hearing, and heard testimony from a Vocational Expert at each hearing.  (T – 79-129, 32-77 ).  Both experts

testified that Plaintiff could not return to his past relevant work.  (T – 123, 74).   The ALJ posed different hypotheticals to each expert. (T – 123-24, 73-76).   In regard to the first Vocational Expert testifying at the January 2011 hearing, the ALJ posed a hypothetical in which the individual possessed the limitations in the ALJ's residual functional capacity finding, and the Vocational Expert testified that there were other jobs in the national economy which such an individual could perform.   ( T – 123-25).   The Vocational Expert testified that her testimony was consistent with the Dictionary of Occupational Titles.  (T – 125).   In the second hearing before the ALJ, a second Vocational Expert testified.  (T – 71-76).   In   hypotheticals posed to the second Vocational Expert, the ALJ included the limitations set forth by Dr. Spivey and the limitations to which the Plaintiff testified, and the Vocational Expert testified that an individual with these sets of limitations could not perform other jobs in the national economy.   (T – 73-76).

As the Commissioner asserts, the ALJ did not find the limitations set forth by Dr. Spivey or the additional limitations asserted by the Plaintiff to be supported by the record.   (T – 137-42). Accordingly, the ALJ was not required to accept the subsequent Vocational Expert testimony relying on such limitations.   *Crawford v. Comm'r. of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

Additionally, as the first Vocational Expert testified that her findings were consistent with the Dictionary of Occupational Titles, the ALJ was entitled to rely on the expert's testimony.  *Hurtado v. Comm'r. of Social* Security, 425 Fed.Appx. 793, 796 (11th Cir. 2011); *Jones v. Apfel*, 190 F.3d 1224 (11th Cir. 1999) (finding that the ALJ is entitled to rely on vocational expert testimony even when it conflicts with the Dictionary of Occupational Titles).

*Conclusion*

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g).  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 7th day of March, 2014.

                                                                    s/   *THOMAS Q. LANGSTAFF*
                                                                    **UNITED STATES MAGISTRATE JUDGE**

asb